AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
для
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
3/31/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: RAM  DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
03/31/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: D. Brown  DEPUTY

UNITED STATES OF AMERICA,  )
v.  )
JAMES SHIDNER,  )  Case No. 5:22-MJ-00201
 )
 )
 )
 )
Defendant(s)

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 18, 2022__ in the county of __Riverside__ in the __Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C). | See attached affidavit |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

/s/ pursuant to Fed. R. Crim. P. 4.1
Complainant's signature

FBI Special Agent, Estevan Banuelos
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: March 31, 2022

Judge's signature

City and state: Riverside, CA

Hon. Kenly Kiya Kato, U.S. Magistrate Judge
Printed name and title

AUSA: Stephen T. Merrill (x6144)

**AFFIDAVIT**

I, Estevan Banuelos, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.   I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered to conduct investigations of, and to make arrests for, federal felony offenses enumerated in 18 U.S.C. § 2516.

2.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since October 2019.  I am currently assigned to the FBI Los Angeles Field Office, Riverside Resident Agency, where I conduct violent-crime investigations.  I have completed the 18-week training program given by the FBI, which includes instruction in the investigation of various criminal offenses governed by federal law.  I have received training in the enforcement of the laws of the United States, including training in the preparation, presentation, service, and execution of criminal complaints as well as arrest and search warrants.

2.   My responsibilities also include investigating drug trafficking organizations operating in Riverside County California and elsewhere and the distribution of illegal drugs causing death.

3.   Based on my training, experience, and conversations with other narcotics investigators, I am familiar with drug traffickers' methods of operation including the distribution, storage, transportation of drugs, and the collection of drug

proceeds. I have received training and have collaborated with other law enforcement officers about investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal narcotics, in violation of Titles 18 and 21 of the United States Code.

3. During my employment with the FBI, I have participated in narcotics investigations through the surveillance, execution of search warrants, and arrests of drug traffickers. In addition, I have spoken to informants and suspects regarding the methods and means of drug traffickers. I have debriefed persons arrested for controlled substance trafficking and have debriefed informants on the methods for gathering controlled substance intelligence. I have spoken with experienced narcotics investigators concerning the methods and practices of narcotics traffickers. Through my training, experience and interaction with other special agents, task force officers, and other narcotics investigators, I have become familiar with narcotic traffickers' methods of operation, including the distribution, transportation, collection of proceeds and methods of laundering used in an attempt to conceal the nature of narcotic related proceeds. Through these interactions I have become familiar with and developed an understanding for the manner in which controlled substances are imported, manufactured, distributed, and sold, to include the methods of avoiding detection and apprehension by law enforcement officers. I am familiar with

the manner in which narcotics traffickers use wireless communication equipment such as cellular telephone technology, pagers, coded communications, false identities, and counter surveillance to determine the presence of law enforcement and other means to facilitate their illegal activities and avoid detection or mislead a narcotics investigation.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against, and arrest warrant for, James Shidner ("SHIDNER") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and (b)(1)(C) (possession with intent to distribute methamphetamine and fentanyl).

5. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6. On February 18, 2022, members of the Riverside County Sheriff's Department ("RSO") arrested SHIDNER for being in possession of drug paraphernalia and being in violation of his Post Release Community Supervision ("PRCS") terms and conditions.

7. During the arrest, SHIDNER notified the arresting deputy that he had narcotics "cheeked between his ass cheeks." SHIDNER was uncuffed and allowed to remove a nylon baggie from his rectal area. The nylon baggie contained two additional separate baggies. One baggie contained approximately 16 grams of methamphetamine, and the other baggie contained approximately 4 grams of fentanyl.

### IV. STATEMENT OF PROBABLE CAUSE

8. On March 29, 2022, I met with Riverside County Sheriff's (RSO) Deputy Miguel Vega-Santos to discuss his ongoing investigation of SHIDNER's drug trafficking activities. Deputy Vega-Santos is a member of RSO's Southwest Special Enforcement Team. The team is tasked with investigating drug trafficking activities in Riverside County.

9. Deputy Vega-Santos explained he had been investigating SHIDNER for months. Deputy Vega-Santos has spoken with multiple individuals who have identified SHIDNER as a fentanyl dealer. Deputy Vega-Santos also explained that on February 15, 2022, SHIDNER's 17-year-old daughter was found in a local motel room after she had overdosed on fentanyl.

10. Deputy Vega-Santos told me about his arrest of SHIDNER on February 18, 2022, for possession of methamphetamine and fentanyl for sale. I have reviewed Deputy Vega-Santos' report (RSO report #TE220490082) documenting the arrest, and learned the following:

    a. On February 18, 2022, at approximately 12:00 p.m., Deputy Vega-Santos was working as a member of RSO's

Southwest Special Enforcement Team when he responded to the area of Old Town Front Street and Moreno Road in the city of Temecula, county of Riverside, to assist his partner, Deputy Cummings, with a traffic stop. Deputy Cummings contacted the driver of the vehicle, CS-1, and discovered CS-1 was on Post Release Community Supervision (PRCS) for possession of a controlled substance while armed with a loaded firearm.

      b.   CS-1 informed Deputy Cummings that he had just rented a motel room at the Motel 6 located at 41900 Moreno Road in Temecula, for a local parolee identified as SHIDNER. CS-1 said the room number was 217.

      c.   Because Deputy Vega-Santos was familiar with SHIDNER, and had been investigating SHIDNER for several months for the distribution illegal narcotics, he and Deputy Cummings decided to contact SHIDNER at the motel 6 and search his room and person for illegal narcotics. Deputy Vega-Santos was aware SHIDNER was on PRCS and that he was subject to search at any time.

      d.   When Deputy Cummings and Vega-Santos arrived at room 217, they repeatedly knocked on the door. After approximately two minutes, SHIDNER opened the door and was detained.

      e.   The deputies then searched the room. Under a pillow on the bed, they located a zipper pouch that contained burnt foil, multiple straws, and approximately 50 unused baggies commonly used to distribute illegal drugs. SHIDNER claimed the pouch belonged to CS-1, and that he did not use fentanyl.

   f. Inside a duffle bag that SHIDNER claimed was his, the deputies located a methamphetamine pipe.  During a search of SHIDNER'S person, deputies located $1,229 in cash.  Inside a backpack SHIDNER said was his, deputies located a gun cleaning kit, a handgun holster, and 28 grams of marijuana.

   g. SHIDNER told deputies the methamphetamine pipe was his and that he had smoked methamphetamine approximately two days prior.

   h. SHIDNER was arrested for being in possession of drug paraphernalia and being in violation of his PRCS terms and conditions.  As Deputy Vega-Santos escorted SHIDNER out of the motel, SHIDNER told Deputy Vega-Santos that he had narcotics "cheeked, between [his] ass cheeks."  SHIDNER told Deputy Vega-Santos that he had a "quarter ounce" of methamphetamine and two grams of fentanyl.

   i. When SHIDNER and Deputy Vega-Santos reached the patrol vehicle, Deputy Vega-Santos uncuffed SHIDNER.  SHIDNER then removed a nylon baggie from his rectal area and placed it on the trunk of Deputy Vega-Santos' vehicle.

   j. The nylon baggie contained two additional separate baggies.  One baggie contained approximately 16 grams of a white crystalline substance consistent in appearance with methamphetamine.  The other baggie contained approximately 4 grams of fentanyl.

   k. Deputy Vega-Santos then transported SHIDNER to the Southwest RSO Station.  Deputy Vega-Santos read SHIDNER his <u>Miranda</u> advisements from his Department-issued <u>Miranda</u> Card.

SHIDNER agreed to speak to Deputy Vega-Santos. During the interview, SHIDNER stated he knew he would get booked into the jail and wanted to provide Deputy Vega-Santos with the narcotics before getting booked. SHIDNER believed he had about half an ounce of methamphetamine and three grams of fentanyl. He said the narcotics did not belong to him and he was not selling narcotics. SHINDER further stated the narcotics belonged to CS-1 and he had hidden the narcotics inside his rectum because he did not want to get arrested for possession of the drugs when the deputies knocked on his door.

   l. SHIDNER told Deputy Vega-Santos the empty baggies found in the room also belonged to CS-1 and the money he had with him was from his SSI paycheck. SHINDER said the only illegal drug item in the room that belonged to him was the methamphetamine pipe.

   m. SHIDNER told Deputy Vega-Santos that there was "possibly" going to be evidence on his cellphone of him selling narcotics. SHINDER consented to a search of his cellphone and during a search of the phone, Deputy Vega-Santos found multiple text messages in which SHINDER was contacted by individuals requesting to buy narcotics from SHIDNER, and SHIDNER agreed to sell them narcotics.

   11. I have reviewed some of the text messages found on SHIDNER's phone between SHIDNER and another individual who appears to assist SHIDNER in his drug trafficking activities. The person is listed as "Shitty" in SHIDNER's contacts on his phone. On February 16, 2022, SHIDNER texted Shitty and

7

complained that drug sales have slowed down over the past four days. Shitty responds, "I haven't heard from Chris and Kendra, angela, or any of our other regulars. I had nasty hit me up because he had 2 norco's and wanted to trade them for fetty. Donut is looking for fetty right now, I told him to call you."

  12. On February 17, 2022, SHIDNER again complains to Shitty that sales are slow and that he believes Shitty is may be taking his business. Shitty responds,

> ...I have literally given every single person who has called for a sack your number and said I don't have it to call you. I have asked the regulars who have not been calling if ther's a reason they haven't called either of us and I haven't heard anything yet. Everyone has your number, I have been telling them I don't have anything, I don't know what you want from me beyond that." Shitty further states, "I even sent you a couple people who are my customer and who never had met you before. And I sent them to you to pickup a ball yesterday. I could have sent them to someone that would have broken me off but I sent them to you because it's been so slow.

  13. Based on my training and experience and discussions with other law enforcement officers, I know that "fetty" is a slang term for fentanyl.

  14. Based on my training and experience and discussions with other law enforcement officers, I know the amount of methamphetamine and fentanyl SHIDNER had with him is more than the average amount a drug user would possess at one time for personal use. I know the average user of methamphetamine will use approximately 1 to 3 grams over a five-day period, and the average user of fentanyl will use 0.5 grams over a five-day period due to its high potency.

15. Based on my training and experience and discussions with other law enforcement officers, the street value of the methamphetamine and fentanyl SHIDNER possessed is approximately $1,600.

16. Deputy Vega-Santos has informed me that SHIDNER is unemployed and lives out of motel rooms. He uses "runners" to transport drugs and money to his customers.

17. Based on the facts described above, it is my opinion SHIDNER possessed the methamphetamine and fentanyl with the intent to distribute it. He was in possession of 20 grams of illicit narcotics, $1,229 in assorted U.S. currency, and numerous plastic baggies. Additionally, in his cellphone, evidence was found indicating SHIDNER is actively engaged in drug trafficking.

///

///

## V. CONCLUSION

18. For all the reasons described above, there is probable cause to believe that SHIDNER has committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C) (possession of methamphetamine and fentanyl with intent to distribute).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 31st day of
March, 2022.

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE